HENRY C. TAYLOR, Appellee, v. C. E. LOVETT *et al.*, Appellants.

1. **Unincorporated Joint Stock Company**: RIGHTS OF MEMBERS: PURCHASE OF STOCK. Where the articles of association of an unincorporated joint stock company, organized for the purpose of conducting a banking business, permitted its members to borrow money of the company, and contained no prohibition against the sale of the stock of one member to another, but provided simply that the company should have a first option to purchase stock offered for sale, and some of the company's stock was purchased by one of its members at one-half its value with money borrowed of the company for that purpose,

after the company had waived its option to purchase, *held*, that the purchaser could not be compelled to account to the company for the profits from such transaction upon the ground that one partner can not use the money or property of the partnership for his own benefit.

2. ——: ——: ——. In consideration of a loan by the company of an amount necessary to purchase said stock, the purchaser offered to give one-third of the stock purchased, but the cashier of the company insisted upon his having one-half of the same. The loan was finally made, however, under an agreement that the consideration to be paid should be settled thereafter, but no settlement was effected. *Held*, that the money having been furnished with knowledge that only one-third of the stock was offered as a consideration, the cashier was entitled to that proportion only, and that the purchaser could not be heard to complain that the cashier chose to claim the same for the company instead of for himself.

*Appeal from Davis District Court.*—HON. C. D. LEGGETT, Judge.

MONDAY, JANUARY 23, 1893.

THIS controversy involves the ownership of two hundred and sixty-five shares of the capital stock of the Davis County Bank. The plaintiff is a stockholder in the bank, and claims to be the owner by purchase from one John Small. The defendant, Lovett, is cashier of the bank, and he claims that the shares of stock were purchased of Small by the said bank. After the action was commenced, S. G. Steele and Andrew J. Guile and J. J. Walkup, holders of stock in the bank, intervened in the action, claiming that they, as stockholders, were interested in the purchase of said stock. Lovett, as cashier, filed a paper claiming the same to be an intervention by the bank, and alleging that it was the owner of the stock in controversy; and J. H. Taylor, a stockholder and president of the bank, filed a pleading in behalf of the bank, disclaiming any interest in the stock; and said Taylor and M. H. Jones, another stockholder, filed pleadings for themselves, alleging that they had no interest in said stock. The action was originally commenced at law. After all the

pleadings were filed, it was transferred to the equity side of the court on the motion of Lovett and those of the stockholders who claimed that the bank was the owner of the stock. The other side of the controversy resisted this motion, and excepted to the ruling of the court thereon, but at about the time of the submission of the cause in this court the objection was withdrawn. There was a full hearing on the merits, and a decree was entered awarding two-thirds of the stock to the plaintiff and one-third to the bank. The defendant, Lovett, and those parties claiming that the bank owned all the stock, appealed, and the plaintiff appealed because he was not awarded all of the stock. The defendants will be designated in the opinion as appellants.—*Affirmed*.

*William McNett* and *Payne & Eichelberger*, for appellants.

*E. L. Burton* and *M. H. Jones*, for appellees.

ROTHROCK, J.—I. The cause is here for trial anew. The facts necessary to an understanding of the controversy are as follows: The Davis County Bank was organized and commenced business as a banking institution on the first day of January, 1875, and it was to continue for the period of fifteen years. It was not an incorporated company, but was organized under an agreement in writing entered into by the stockholders, which in many respects was similar to articles of incorporation. It had a president, vice president, cashier, and directors. It had a banking house, received deposits, loaned money, sold exchange, and did general banking business, the same as it would have done if it had been incorporated. The business of the bank was managed by its officers, and largely by its cashier. It was a joint stock company, having some of the elements of a partnership, and indeed it might

properly be called a special partnership. The bank had a very successful career. The capital stock at the time of the organization actually paid in was about thirty-two thousand dollars. Each subscriber to the capital stock paid one-half of his subscription, and received a certificate for the whole amount subscribed. The form of one of the certificates issued to John Small was as follows:

"No 15.                                        250 shares.

"CERTIFICATE OF STOCK OF THE DAVIS COUNTY BANK.

"BLOOMFIELD, IOWA, January 1, 1875.

"*This is to certify* that John Small is entitled to two hundred and fifty shares, of one hundred dollars each, of the capital stock of the Davis County Bank, one half of which has been paid in, and the other one half to be paid from the net earnings of the bank. Transferable only by written assignment on the books of the bank.

"J. H. TAYLOR,                    C. E. LOVETT,
      "President.                         Cashier."

The other half of the stock was paid from the net earnings of the bank in six years after its organization; and from that time to the commencement of this suit the stockholders were paid dividends of ten per cent. per annum upon the whole of the stock, and it is conceded that the stock was at par at the time this controversy arose. J. H. Taylor, the president, Lovett, the cashier, and John Small were at all times the principal stockholders. Before Small sold his stock he was the owner of two hundred and sixty-five shares, J. H. Taylor owned one hundred shares, and C. E. Lovett had two hundred and forty-one shares. The plaintiff owned five shares, and the other stockholders, all of whom are parties to this action, owned thirty-nine shares in the aggregate, so that the whole capital stock

was six hundred and fifty shares.   John Small sold his stock on the tenth day of April, 1889.   The ultimate question, and the only question, for determination in this case is, did he sell the stock to the plaintiff, as the plaintiff, the president of the bank, and Small and Jones claim he did, or did he sell it to the bank, as claimed by Lovett, the cashier, and by the other stockholders who are on his side of the controversy?

Before proceeding to state our findings upon this question of fact we will advert again to the articles of asscciation.   This written instrument was deposited with the cashier, but it has been lost.   No one has seen it since it was signed and deposited in the bank.   As the bank was organized without incorporation, and all the stockholders were liable, not only jointly, but severally, for its debts, it was important that the stockholders should be men who were able to pay debts; and there was a provision in the articles which was intended as a limitation of the right of a stockholder to sell or assign his stock.   A number of witnesses were examined as to what this provision was.   They all agreed that the bank was to have an option to purchase any stock offered for sale.   After examining all the evidence upon this question, we think that the provision was about as stated by one witness, as follows: "That it was the duty of any stockholder desiring to sell his stock to offer it first to the bank, and, if the bank did not wish to purchase it, then the stockholder was at liberty to sell it to any one with whom he could make a bargain."   This provision, however, was not literally followed.   Sales of stock were made without first consulting the bank officers, and the transfers were made by Lovett without objection.   There can be no question that the matter of purchasing the stock for the bank was intrusted to Lovett, and that he had the power to waive the right to take in the stock for the bank.   John Small was about seventy-six years old when he sold his

stock. He did not know that the bank had the right to purchase stock, and, if he ever was informed of that fact, it had passed out of his mind. He was worth some sixty thousand dollars in bank stock and other property. He resided about ten miles from Bloomfield. He had domestic trouble. His wife was about to commence action against him, and on the tenth day of April, 1889, he took his certificates of bank stock and went to Bloomfield, and offered to sell them to the plaintiff for fourteen thousand dollars, or about one half of their value. He did not first go to the bank. The plaintiff went to J. H. Taylor, who is president of the bank, and who is his father, to see if he could raise the money to buy the stock. His father did not have the ready money to make the purchase. They went to the bank and had a conference with Lovett. At the close of this interview the plaintiff returned to his office, where he had left Small, and went with him to the bank, and the plaintiff wrote the assignment and transfer of the certificates. The name of the assignee was left blank, and the certificates were not taken away by the plaintiff. They were left in the bank. There was a balance due the bank from Small, and this amount was adjusted, and the remainder of the fourteen thousand dollars was paid to him in drafts drawn by the bank on a New York bank. The drafts were delivered to him on the next day.

The rights of the parties depend upon what transpired between J. H. Taylor, Henry Taylor, and Lovett at the bank when application was made for money with which to make the purchase, and what occurred at the time that the certificates were assigned by Small and left with Lovett. One thing is certain beyond all question, and that is that Small supposed he had sold his stock to Henry Taylor, the plaintiff. He had no thought that it was sold to the bank. He so testified as a witness, in the most positive terms. Another fact

practically undisputed is that in the whole transaction there was no mention made that the bank was a party to the transaction. We have stated these facts as established, and the evidence in their support is clear and satisfactory, and the question should not be the subject of debate.

We will now state other facts which, although disputed, are established by a clear preponderance of evidence. When the plaintiff and J. H. Taylor made application for the money, Lovett at once demanded as a condition to the loan of the money of the bank that he should have one-half of the profits of the venture. He did not claim that he must have one-half for the bank. The plaintiff offered to allow him one-third, but he still insisted on one-half, and, as it was necessary that the matter should be closed up at once, it was agreed that the plaintiff should bring Small to the bank, and that the shares of the profit should be adjusted afterwards; and it is manifest from all the testimony that this was the reason that the name of the plaintiff was not filled in as assignee. On the next day Lovett refused to make any adjustment of the matter, and in eight days after that he first made the claim that the purchase was made for the bank; and there is much force in the claim that this was an afterthought, based on the idea that, if the Small stock was extinguished at fifty cents on the dollar, Lovett would own about one-half the bank, and would make as much by the transaction as if plaintiff had consented to dividing the profits of the purchase with him. And then, again, there is plausibility in the claim that the bank had the option to make the purchase. But Lovett waived any right to make the purchase for the bank, and there can be no doubt that he had the authority to use his judgment in that matter. If he wanted to make the purchase for the bank it was his duty to assert that right when John Small appeared to make the assign-

ment and sell his stock to the plaintiff. It is true that the plaintiff claims that the payment by the bank to Small was a loan from the bank to the plaintiff; and it is argued with much force, in behalf of Lovett, that the transaction was not a loan, but that it was a payment for the stock by the bank, and that because of such payment the bank became the owner of such stock. But the evidence shows to our satisfaction that although no note was given for the money, nor rate of interest or time of payment fixed, yet the transaction was intended by Lovett as a loan to the plaintiff. The time had not come to give a note for the money. The share which Lovett was to have was not yet adjusted; and this is the fair explanation of the omission to insert any one's name as the assignee of the stock. There was no question that if the loan had been consummated the security therefor was ample. J. H. Taylor went to the bank for the very purpose of indorsing for the plaintiff in securing the money, and the evidence shows that his name was ample security for that amount.

There is but one question of law in the case which demands consideration. It may be stated as follows: 1. UNINCORPO-RATED joint stock company: rights of members: purchase of stock. Under the facts as found above, should the profits arising from the purchase of John Small's stock be shared by all the stockholders of the bank in proportion to the shares of stock held by them? If the bank should in law be regarded as the purchaser of the stock, then the position of Lovett must be sustained, notwithstanding the fact that the persons who made the contract entered into it for their own benefit. It is most strenuously contended in behalf of the appellants that the stockholders were mere partners in the banking business, and that the plaintiff and J. H. Taylor and Lovett were all stockholders, and they had no right to use the money of the bank for their private benefit, and that they should be required to account to the

bank for the profits, and should be regarded as trustees of the partnership as to stock purchased of Small. It was wholly unnecessary for the appellants' counsel to cite page after page of authorities and quotations therefrom to establish the principle that one member of the partnership can not be allowed to use the money or property of the partnership for his own benefit. The principle is correct, and as old as the law of partnership; but it has no application to a special partnership, such as this banking institution appears to be. By the very terms of the articles of association it was essentially different from the ordinary partner-ship. Its principal business was to loan money. The stockholders had the same right to borrow its money that a stranger to the firm had. John Small appears to have been a borrower from the bank. There was no agreement that one stockholder should not sell his stock to another. There was the limitation that the bank should have the option to purchase the stock; but as we have found that the option was waived, and the purchase of the stock by the plaintiff was a valid transaction, there is no more reason for holding that the plaintiff can not be allowed to profit by the venture than there would be if he had borrowed the money, and bought land or any other property with it at less than it was worth.

II. The plaintiff appeals because he was not awarded all of the stock. He was not entitled to all of it. He offered and was willing to allow Lovett to have one-third of it. Lovett demanded one-half, but he furnished the money without an agreement that he should have one-half, and knowing that but one-third was offered. Under these circumstances we think the district court rightly held that he was entitled to one-third; and, as he has seen fit to claim that third for the bank, the plaintiff can not be heard to complain.

The decree of the district court will be AFFIRMED.